UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEDON HOWARD, | ) | CASE NO. 1:23-cv-1434 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| D.E. DENNISON, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is a motion for judgment on the pleadings filed by D.E. Dennison ("Dennison") and Keith (collectively, "Defendants"). (Doc. No. 9.) Plaintiff opposed the motion, and Defendants replied. (Doc. Nos. 10, 11.) Defendants' motion for judgment on the pleadings is GRANTED and this action is DISMISSED without prejudice.

I.  **BACKGROUND**

  A.  **Allegations in the Complaint**

On July 25, 2023, plaintiff LeDon Howard ("Howard" or "Plaintiff") filed a *pro se* prisoner's § 1983 complaint against Defendants, both of whom are corrections officers at Richland Correctional Institution ("RCI") in Mansfield, Ohio.[1] Plaintiff alleges that on

---

[1] Except as otherwise noted, all background facts are taken from the complaint (Doc. No. 1) and supplement (Doc. No. 7), together, the first amended complaint ("FAC"). Additionally, all allegations contained in the FAC are taken as true for the purpose of the present motion. *See Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted).

November 6, 2022, Defendants used excessive force during an altercation, which caused him emotional distress. (Doc. No. 1 at 5.)[2]

Plaintiff alleges he encountered Dennison in the bunk area after being informed by another prisoner that Dennison had mishandled Plaintiff's tablet. (*Id.*) When Plaintiff approached Dennison and asked him about the tablet, he alleges Dennison became irate. (*Id.* at 5-6.) When Plaintiff stated he was going to write up Dennison via the grievance procedure for inappropriate supervision, Dennison became angry and stated he was going to search Plaintiff's bunk. (*Id.* at 6.) Plaintiff followed Dennison to his bunk, put on his shoes, and attempted to leave the area. (*Id.*) Dennison then stopped Plaintiff from leaving, yelled in Plaintiff's face, and became aggressive. (*Id.*) Dennison continued searching Plaintiff's bunk while ranting, and other prisoners began to gather. (*Id.* at 6-7.) Plaintiff further alleges Dennison told Plaintiff to cuff up, and Plaintiff inquired why he was being asked to cuff up and asked for a supervising officer. (*Id.* at 7.) According to Plaintiff, "for no reason whatsoever," Dennison then sprayed Plaintiff in the face with mace. (*Id.*) Plaintiff asked why he was maced, and other prisoners began to gather at the scene. (*Id.*) Dennison then sprayed Plaintiff with mace again while Plaintiff tried to wipe his face. (*Id.*)

Plaintiff then states he walked toward the restroom and heard someone say cuff up, but asked if he could rinse off his face first. (*Id.* at 7-8.) Plaintiff walked to the restroom and heard officers enter behind him but became fearful because of a recent incident where a prisoner was killed by officers in the restroom. (*Id.* at 8.) Upon exiting the restroom, Plaintiff alleges an

---

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

officer twisted his arm and, in a natural response, Plaintiff pulled his arm back. (*Id.*) Plaintiff further alleges he told officers he had not done anything wrong. (*Id.*)

Officers were escorting Plaintiff when Dennison began punching him multiple times to the face while Keith struck Plaintiff several times with his mace can, "causing immediate damage and injuries." (*Id.*) Plaintiff references video footage from Defendants' body cameras, which he alleges shows Dennison assaulting Plaintiff in the back of his head with his cuffs as a weapon and Keith assaulting Plaintiff with the mace can. (*Id.* at 8-9.) These actions left Plaintiff with a laceration on the head, and he was "bloody, battered, and bruised." (*Id.* at 9.) Plaintiff did not go to the hospital, but a nurse attended to the laceration. (Doc. No. 1-3 at 33.) Plaintiff states he later learned his injuries were a result of Defendants "maliciously utilizing their mace can and cuffs improperly," which Plaintiff alleges are violations of use of force policies AR 5120-9-01, 02, and ODRC Policy 63-UOF-01. (Doc. No. 1 at 9.) Plaintiff further alleges due to Defendants' "intentional and malicious actions," he incurred "severe and irreparable injuries" in violation of his civil rights. (*Id.*)

As a result of this incident, Plaintiff received three Rules Infraction Board ("RIB") rule violations and an increase in security level due to his "behavior of physically resisting staff and assaultive actions." (Doc. No. 1-2 at 26-31.)

On Plaintiff's complaint, §V.II., Exhaustion of Administrative Remedies Administrative Procedures, Plaintiff states that the grievance procedure at RCI covered his excessive force claim. (Doc. No. 1 at 11.) Plaintiff further states that he filed grievances with RCI and with the Ohio State High Patrol, which resulted in Use of Force investigations. (*Id.* at 12.) However, in §V.II.E.4. of the complaint which asks what steps, if any, were taken to appeal the grievance, Plaintiff wrote, "Attempted to initiate informal and grievance to what was made available to no

avail, in restricted housing kiosk was broken and staff failed to forward or respond to my complaints correctly." (*Id.*) In §V.II.F., Plaintiff again lists the broken kiosk in restrictive housing as the reason why he did not file a grievance and states he "appealed the SMP decision with no resolve." (*Id.* at 13.) In §V.II.G., Plaintiff lists the additional information that he contacted Ohio State Highway Patrol for an investigation as relevant to the exhaustion of his administrative remedies. (*Id.*)

B. **Procedural History**

Plaintiff brings the following claims against Defendants in their individual capacities: "'Excessive Use of Force,' 'Unnecessary and Wanton Infliction of Pain,' and 'Emotional Distress' for violations of his civil rights under the Fourth and Eighth Amendments to the U.S. Constitution of America." (Doc. No. 1 at 5.) Plaintiff requests punitive and compensatory damages of $500,000 for his injuries. (*Id.* at 10.)

Plaintiff attached the following exhibits to his complaint: Dennison's conduct report submitted on 11/7/2022 (Doc. No. 1-2 at 21-22); Plaintiff's informal and Kite complaints submitted on 11/16/2022, 11/18/2022, and 11/24/2022 (*Id.* at 23-25); the investigation and appeal of Plaintiff's increased security classification because of the incident (*Id.* at 26-31); and the Ohio State Highway Patrol investigation report of the incident (Doc. No. 1-3 at 33-42).

On August 21, 2023, Defendants answered the complaint and moved for judgment on the pleadings. (Doc. Nos. 5, 6.)

On October 19, 2023, Plaintiff filed a supplement to the complaint, which the Court *sua sponte* construed as a motion to amend his initial complaint to include the supplemental information and granted. (Doc. Nos. 7, 8.) The supplemental information includes the body

camera video footage from Defendants, pictures of Plaintiff taken after the incident, and correspondence requesting all evidence pertaining to the incident. (Doc. No. 7-1.)

Defendants thereafter filed a revised motion for judgment on the pleadings. (Doc. No. 9.) Plaintiff timely responded (Doc. No. 10), and Defendants replied (Doc. No. 11). Defendants argue that the Court should dismiss the FAC because: (1) the record establishes that Defendants' application of force in response to Plaintiff's resistance was not excessive; (2) Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (3) Plaintiff's claims should be dismissed due to his failure to exhaust administrative remedies. (Doc. No. 9.)

## II.     LAW AND ANALYSIS

### A.     Standard of Review

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim under 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted).

"A complaint need not contain 'detailed factual allegations.' But it must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *LM Ins. Corp. v. Criss for Estate of Szuhay*, 716 F. App'x 530, 533 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "Mere labels and conclusions are not enough." *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017).  The Court "need not accept legal conclusions" in the complaint as being true unless the complaint supports them with enough pleaded facts.  *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020).

Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'"  *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  "However, this lenient treatment has limits . . . 'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

"When reviewing a motion for judgment on the pleadings, [courts] generally may only review the pleadings, any attachments to those pleadings, and documents that are 'referred to in the complaint and [are] central to the plaintiff's claim.'"  *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024) (quoting *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)).  The Sixth Circuit has "acknowledged that where a complaint even 'implicitly relies on [a] video[]' it can make sense to consider it even at an early stage of litigation." *Id.* (citing *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022).  The Sixth Circuit has also consistently held that a court "may only consider the video footage over the pleadings when the videos are clear and blatantly contradict or utterly discredit plaintiff's version of events . . . because if a video clearly depicts a set of facts contrary to those alleged in the complaint, this makes a plaintiff's allegations implausible." *Id.* (citations omitted).

B.     Section 1983 Claim for Excessive Force

To sustain a § 1983 claim, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state law. 42 U.S.C. § 1983. Although Plaintiff cites violations under both the Fourth and Eighth Amendments, a claim of excessive force asserted by a convicted prisoner must be raised under the Eighth Amendment rather than the Fourth Amendment. *See Cornwell v. Dahlberg*, 963 F.2d 912, 915-16 (6th Cir. 1992).

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1093 (6th Cir. 2019) (citations omitted). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). To prevail on a claim of excessive force, a prisoner "must demonstrate that the defendant acted 'maliciously and sadistically to cause harm.'" *Porter v. Nussle*, 534 U.S. 516, 528 (2002) (quoting *Hudson*, 503 U.S. at 7). "[T]he prisoner must satisfy both an objective and a subjective component." *Rafferty*, 915 F.3d at 1094 (citation omitted). "The objective component requires the pain inflicted be sufficiently serious." *Id.* (citations omitted). "[T]he Eighth Amendment protects prisoners only from that conduct which is 'repugnant to the conscience of mankind.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010)). The subjective component requires a heightened showing that the prison official acted maliciously and sadistically for the very purpose of causing harm." *Id.*

1. **The *Heck* Doctrine**

Relying on *Heck v. Humphrey*, 512 U.S. 477, 483-87 (1994), Defendants assert that Plaintiff's RIB violations bar his § 1983 claim. Under *Heck*, a state prisoner's claim for damages is not cognizable under § 1983 if a judgment in favor of the prisoner on the claim would necessarily imply the invalidity of his conviction or sentence unless the prisoner can demonstrate the conviction or sentence has been invalidated. Defendants cite to *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) for their assertion that *Heck* applies to prison disciplinary decisions. And it may, in certain circumstances. However, in *Edwards*, the Supreme Court extended the *Heck* doctrine to prison administrative proceedings that resulted in the deprivation of good-time credits. 520 U.S. at 648. *Heck* does not categorically bar all suits challenging prison disciplinary proceedings. *Muhammad v. Close*, 540 U.S. 749, 754 (2004). Where success in a prisoner's § 1983 action would not necessarily affect the duration of his underlying sentence or imply immediate or speedier release from confinement, the action is not barred by *Heck* and its progeny. *See Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007).

Here, Plaintiff's RIB violations followed the incident and led only to an increase in his security level (Doc. No. 1-2 at 26-31). There is nothing in the record establishing that those violations affected the duration of his underlying sentence. Accordingly, the *Heck* doctrine does not apply.

2. **Failure to Exhaust Administrative Remedies**

Under the Prison Litigation Reform Act of 1995, a prisoner may not bring a federal action related to prison conditions "until such administrative procedures as are available are exhausted." 42 U.S.C. § 1997e(a). Complete exhaustion is mandatory, meaning failure to

exhaust cannot be excused, even under special circumstances. *Ross v. Blake*, 578 U.S. 632, 638-39 (2016). "[E]xhaustion of administrative remedies [is an] affirmative defense[ ] on which a defendant bears the ultimate burden of proof." *Bushong v. Delaware City Sch. Dist.*, 851 F. App'x 541, 545 (6th Cir. 2021) (quoting *Rembisz v. Lew*, 590 F. App'x 501, 503 (6th Cir. 2014) (citation omitted)). "Because the failure to exhaust is an affirmative defense, dismissal under Rule 12(b)(6) or 12(c) is appropriate only if the face of the complaint shows that the plaintiff has not in fact exhausted her administrative remedies." *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.") (citation omitted)).

To properly exhaust a claim, prisoners must take "advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 95 (2006)). "Proper exhaustion [further] demands compliance with an agency's deadlines." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x. 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

Ohio law also requires that prisoners provide specific information in the form of "dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved." Ohio Admin. Code § 5120-9-31(J). A plaintiff therefore "generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is

required by the applicable grievance procedures." *Triplett v. Sheldon*, No. 3:14CV819, 2018 WL 3105064, at *2-3 (N.D. Ohio June 25, 2018) (quoting *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011)). Section 5120-9-31 of the Ohio Administrative Code sets forth the three-step state prisoner grievance procedure: (1) the filing of an informal complaint; (2) the filing of the notification of grievance; and (3) the filing of an appeal of the disposition of grievance.

Here, Plaintiff affirmatively pleads in the complaint that he failed to follow the grievance procedure. On the complaint form Plaintiff states, he "[a]ttempted to initiate informal and grievance to what was made available to no avail, in restricted housing kiosk was broken and staff failed to forward or respond to my complaints correctly." In *Franklin v. Nusbaum*, No. 1:11CV1848, 2012 WL 7148203 (N.D. Ohio Oct. 29, 2012), *report and recommendation adopted*, No. 1:11CV1848, 2013 WL 587570 (N.D. Ohio Feb. 13, 2013), a prisoner similarly made excessive force claims against correctional officers, and defendants brought a 12(c) motion on the ground that the plaintiff failed to exhaust before filing the complaint. Where the plaintiff circled "NO" on his complaint form when asked whether he presented the facts relating to his complaint in the state prisoner grievance procedure, the district court dismissed the plaintiff's claim without prejudice because he failed to exhaust his administrative remedies. *Franklin*, 2012 WL 7148203, at *2-6; 2013 WL 587570.

Despite Plaintiff's claim that the kiosk in the restrictive housing unit was broken, Defendants point to the informal and Kite complaints he submitted on 11/16/2022, 11/18/2022, and 11/24/2022, which Plaintiff attached to the complaint, to show he did have access to the grievance system while in restrictive housing. (*See* Doc. No. 1-2 at 23-25.) Plaintiff's references to the Use of Force Investigation and investigation by the Ohio State Highway Patrol (Doc. No. 1 at 12) also do not cure his failure to complete the grievance procedure. *See Curry v.*

*Scott*, 249 F.3d 493, 504-05 (6th Cir. 2001) (finding a Use of Force committee investigation by the prison does not satisfy the exhaustion requirement); *Blissit v. Fiquris*, 345 F. Supp. 3d 931, 941 (S.D. Ohio 2018) (citing *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999)) (investigation by another agency, Ohio State Highway Patrol, does not satisfy the exhaustion requirement).

Ultimately, Plaintiff's failure to complete the required appeals under the grievance procedure means that his excessive force claim is not properly exhausted as to both Defendants.[3]

### C. Intentional Infliction of Emotional Distress

"To establish a *prima facie* claim for intentional infliction of emotional distress . . . a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of the plaintiff's serious emotional distress." *Burgess v. Fischer*, 735 F.3d 462, 480 (6th Cir. 2013) (citation omitted). "Liability can only be found where conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citations omitted).

Although Plaintiff's complaint makes scant reference to a pendant state law claim for "emotional distress" (Doc. No. 1 at 5), the Court will construe a *pro se* plaintiff's allegations leniently to include a claim for intentional infliction of emotional distress under Ohio law. *See Garrett*, 374 F. App'x at 614. Plaintiff must allege: (1) Defendants intended to cause him

---

[3] Furthermore, Plaintiff's failure to mention Keith by name in any of Plaintiff's underlying grievance complaints means that Plaintiff completely failed to exhaust his claims against Keith. (*See* Doc. No. 1-2 at 23-25, 28; Doc. No. 1-3 at 33; Doc. No. 7-1 at 77.); *Triplett*, 2018 WL 3105064, at *2-3.

serious emotional distress; (2) Defendants' conduct was extreme and outrageous; and (3) Defendants' conduct was the proximate cause of his serious emotional distress. *Burgess*, 735 F.3d at 480. Evidence of serious emotional distress is not required where the plaintiff has suffered contemporaneous physical injury. *Id.* at 481 n.4 (citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983)).

Here, Plaintiff alleges that due to Defendants' "intentional and malicious actions," he incurred "severe and irreparable injuries." (Doc. No. 1 at 9.) While his allegations may be enough to satisfy the pleading requirements for the first and third elements of Plaintiff's claim, Plaintiff must also allege facts that show Defendants' "conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. . . ." *Burgess*, 735 F.3d at 480 (citations omitted). Defendants assert that Dennison's and Keith's actions were justified given Plaintiff's resistance, and that the alleged assault on Plaintiff is directly refuted by the video footage attached to the complaint. Because Plaintiff's allegations in the FAC explicitly reference the body camera footage, and Plaintiff attached the footage to the FAC (Doc. No. 1 at 8-9; Doc. No. 7-1), the Court may consider it at this stage in assessing whether Defendants' conduct was outrageous and extreme. *See Saalim*, 97 F.4th at 1002.

The Court's assessment of the video footage is that it "blatantly contradicts" Plaintiff's version of events. *Id.* Upon reviewing the footage, the Court finds the video depicts Plaintiff refusing to cuff up when told to do so by Dennison, becoming aggressive when Dennison approaches him, becoming more aggressive after he is maced, and then physically resisting when officers try to handcuff him, which led to a physical altercation between Plaintiff and several officers that brought them to the ground. (Doc. No. 7-1.) The video "clearly depicts a set of

facts contrary to those alleged in the complaint, [which makes Plaintiff's] allegations implausible." *Saalim*, 97 F.4th at 1002.

Plaintiff therefore has not pleaded facts that plausibly give rise to a finding that Defendants' conduct was outrageous and extreme. *Coley v. Lucas Cnty.*, Ohio, No. 3:09-CV-00008, 2014 WL 273194, at *17 (N.D. Ohio Jan. 23, 2014), *aff'd*, 799 F.3d 530 (6th Cir. 2015) (granting motion for judgment on the pleadings where plaintiffs failed to allege facts that could plausibly give rise to a finding that defendant's conduct was outrageous and extreme). Plaintiff therefore fails to state an intentional infliction of emotional distress claim that is plausible on its face.

## III.  CONCLUSION

For the reasons above, Defendants' motion for judgment on the pleadings is GRANTED. This action is DISMISSED without prejudice.

**IT IS SO ORDERED.**

Date:  August 29, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE